UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEO MAY,

               Plaintiff,

    v.

ASSET ACCEPTANCE LLC,

               Defendant.

**DECISION AND ORDER**
11-CV-525S

## I. INTRODUCTION

Plaintiff, Leo May, brings this action alleging that Defendant, Asset Acceptance LLC ("Asset"), violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Presently before this Court is Asset's motion for summary judgment. (Docket No. 26.) For the following reasons, that motion is granted in part and denied in part.

## II. BACKGROUND

### A.    Facts[1]

The parties agree that Asset "is in the business of purchasing charged-off accounts from credit originators and other sellers" and that, in 2006, Asset purchased May's defaulted Providian credit card account carrying an unpaid balance of $10,000. (Def.'s Stmnt., ¶¶ 1-4; Docket No. 30.) The parties, however, have divergent views of the more pertinent facts. May asserts that, despite his requests that they stop and his indication that the debt was exempt from collections, Asset made several harassing phone calls in an

---

[1]This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s Stmnt." and "Def.'s Stmnt." respectively) to the extent that they have not been controverted by the opposing party. See L. R. Civ. P. 56(a)(2) (statements not specifically controverted are deemed admitted).

attempt to collect the outstanding debt. (Pl.'s Stmt., ¶ 10; Docket No. 39.) He further claims that a representative from Asset once falsely informed him that Asset had filed a lawsuit against him and had sent a sheriff to his home. (Id.) Finally, he asserts that Asset failed to correct an Experian credit report that falsely reported the past-due date as 2010 instead of 2006. (Id., ¶ 19.)

Asset paints a different picture. It contends that it made a single, legal telephone call to May, and that it never threatened legal action or suggested that May should expect a sheriff at his home. (Def.'s Stmnt., ¶¶ 10–13.) It also repudiates any responsibility for the incorrect credit report and disputes the import of his exempt status.

## B.   Procedural History

May filed his complaint in this Court on June 21, 2011. (Docket No.1.) On August 22, 2011, Asset filed its answer. (Docket No. 5.) After discovery, Asset filed the present motion for summary judgment on May 9, 2012. (Docket No. 26.) Briefing on this motion concluded on July 12, 2012, at which time this Court took the motion under consideration.

## III. DISCUSSION

## A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact

exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## B.     TCPA Violation

In his complaint May alleges that Asset violated the TCPA, which prohibits, among other things, calls to cell phones made with an automated dialing system and calls to residences using an artificial or prerecorded voice. 47 U.S.C. § 227. But May offers no evidence in support of this claim; in fact, he does not even address Asset's arguments for dismissal. He has, in other words, abandoned this claim and it will therefore be dismissed. See, e.g., Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")

C.     **FDCPA Violations**

May also maintains that Asset violated the FDCPA. Congress intended the FDCPA to provide a remedy to consumers against unfair and abusive debt collection practices. The FDCPA states: "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). May asserts that Asset violated several provisions of the FDCPA, including Sections 1692d, 1692d(5),1692e,1692e(2), 1692e(10), and 1692f. The substance of these claims – including the Experian credit report,  the allegedly improper phone calls, and the exempt status of his debt – will be discussed below.

1.     **Experian report**

May stopped making payments on his Providian credit card in 2006. But a June 2010 Experian credit report incorrectly identified the subject debt as "past due as of May 2010." (June 22, 2010 Experian Report; attached as Ex. "C" Kimmel Decl.; Docket No. 38-3.) May contends that this error adversely affected his credit score. He further argues that Asset should be liable for this error because it "verified" the Experian report in February 2010. In support of this contention, May points to the Experian report itself, which indicates that "[t]his item was verified and updated on Feb 2010." (Sic). May therefore appears to assume that it was Asset who verified the account, and he contends that this constitutes a "false and misleading statement" in violation of Sections 1692e, 1692e(2), and 1692e(10) of the FDCPA. But there are several shortcomings with this theory of liability.

First, there is no evidence demonstrating it was Asset who verified the account in

4

February 2010. For its part,  Asset claims it was not responsible for that verification. May asks this Court to assume that it was Asset based on a cryptic notation on the report. But it is May's burden to elicit some evidence supporting his claim. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ."). He offers none.

Second, May provides no support for his argument that Asset's alleged verification can serve as a violation of the FDCPA. Instead, May relies on an ambivalent statement, in *gratis dictum*, from the Northern District of Illinois. The court in <u>Kohut v. Trans Union LLC</u>, wrote that "if a collection agency knowingly reports inaccurate information to a consumer reporting agency in violation of the F[air] C[redit] R[eporting] A[ct], it is unclear (because this issue is not before the court) whether the collection agency could also be liable under §§ 1692e and 1692e(10) of the FDCPA for using false, deceptive, or misleading means to collect a debt." No. 04 C 2854, 2004 WL 1882239, at *3 (N.D. Ill. Aug. 11, 2004) (parenthesis in original).[2] Although the court raises the possibility of FDCPA liability, this is not a precedential finding on which May can rely.

Finally, even assuming, first, that Asset did verify the account, and second, that these facts could support a claim under the FDCPA, it would be barred by the statute of limitations. An action to enforce liability created under the FDCPA must be commenced within one year of the violation. 15 U.S.C. § 1692k(d). May filed this action on June 21, 2011; thus his claim must have accrued on or after June 21, 2010. But the verification,

---

[2]May does not allege that Asset violated the Fair Credit Reporting Act, 15 U.S.C. § 1681.

which served as the alleged violation, occurred sometime in February 2010, well before that date. Whatever claim May might have must therefore must be dismissed as time barred.

### 2.   Numerous calls, and threats of a lawsuit and the sheriff

May's most salient accusation is that he received a phone call in which, in May's words, "the guy said who he was, from Asset Acceptance. He said, has the sheriff's office been to your door yet? Or today I think. Something like that. And I said no. He says, well, we're -- we filed in court against you, and if the sheriff hasn't been there today, he'll be there shortly." (May Dep. at 35; Docket No. 38-1.) May also generally alleges that Asset called him numerous times in an effort to harass and annoy him.

In support of its motion, Asset argues that May's claim regarding potential legal action should be dismissed because it was not identified in May's complaint and, in any event, is time barred. Additionally, Asset argues that this Court should depart from the general rule that resolutions of credibility should be left to the jury and conclude that no reasonable jury could credit May's verison of the events.

As initial matter, although May did not raise the allegation regarding legal action and the sheriff in his complaint, and although he is not *entitled* to amend his complaint though his deposition or opposition to summary judgment, see Gomez v. City of New York, No. 09 CIV. 620, 2012 WL 1514868, at *4 (E.D.N.Y. Apr. 30, 2012), "an issue presented for the first time in a motion for summary judgment *may* be considered and treated as an amendment of the complaint," Neri v. Coughlin, No. 92 CIV. 7890 (SS), 1993 WL 464687, at *7 (S.D.N.Y. Nov. 9, 1993) (Sotomayor, J.) (emphasis added). Since Asset received notice of this claim at May's deposition and because it was able to respond to it in its reply

6

memorandum, this Court finds that Asset has suffered no undue prejudice – it will consider the issue as properly submitted. See id.; 10A Wright & Miller, *et al.*, Federal Practice & Procedure § 2722 (3rd ed. 2012) ("In addition to the pleadings, Rule 56(c) expressly provides that the court may make use of depositions on a summary-judgment motion.").

So considered, this Court must also reject Asset's contention that the claim is time barred. May is unable to precisely identify the date when he received the call about potential legal action and the sheriff. Asset suggests that it might have occurred outside the limitations period. But May's most concrete statement places the call in August of 2010, which would be within the limitations period. (May Dep., at 48.) Although Asset contends that it placed only one call (on September 2, 2009, outside the limitations period), May obviously disputes this contention. The factual dispute precludes summary judgment on this ground. See Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995) ("Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by *prima facie* proof that the limitations period has expired since the plaintiff's claims accrued"); Estate of Mantle v. Rothgeb, 537 F. Supp. 2d 533, 540–41 (S.D.N.Y. 2008) (denying motion for summary judgment because question of fact existed regarding whether plaintiff's action was barred by the statute of limitations).

May's version of the events is indeed suspect, however. Aside from the Experian report, May's lone factual FDCPA allegation in his complaint is that Asset "made repeated telephone calls to Plaintiff's cellular telephone, leaving voice messages on his answering machine." (Compl., ¶ 26.) This representation is repeated in response to Asset's written discovery requests. (See Docket No. 28-3.) Despite the fact that his complaint is based on various phone calls and messages, May admitted at his deposition that Asset did not leave

any messages on his phone:

> Q. Did Asset Acceptance, in any of those other cell phone
> calls, leave a message on an answering machine?
> A. No, not to my recollection. . . .
> Q. Okay. And then on May 3, your complaint, let's turn the
> page to page 6 and look at paragraph 26.
> A. Yup. Done.
> Q. And is it a true statement that Asset Acceptance left voice
> mail messages on your answering machine?
> A. No, not to my recollection.

(May Dep., at 40, 60.) May also alleged in his complaint that Asset placed calls using an automated telephone dialing system or a prerecorded voice, in violation of the TCPA. But at his deposition, May testified that he spoke only with "human beings," and that he had no knowledge that Asset used an automated dialing system. (May Dep., at 53–54.) Further, May is unable to state precisely when or exactly how many phone calls he received from Asset, stating only that he is sure that he must have received numerous phone calls because they prompted him to write several letters to Asset. May also relies exclusively on his testimony; the only other evidence is contradictory: as noted above, Asset's business records show that Asset placed only one call to May, on September 2, 2009. (Proctor Decl., ¶ 8; Docket No. 29.)

Generally, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir.1997). There is no question that the parties have presented conflicting version of events, and as such, summary judgment would generally be improper. But Asset argues that this Court should employ an exception to that rule. The Second Circuit has recognized such an exception where, despite the presence of conflicting versions of events, summary judgment would

remain proper if there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 555 (2d Cir. 2005). This <u>Jeffreys</u> exception is, however, a "narrow" one and "district courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, 702 F.3d 685, 693 (2d Cir. 2012). In fact, "if there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete." <u>Jeffreys</u>, 426 F.3d at 555 n. 2.

Although May's assertions are sometimes contradictory and inconsistent, this Court finds that the inconsistencies are not so contradictory as to enable it to encroach on the jury's provenance of credibility determination. Throughout the pendency of this case, May has alleged that Asset has made numerous harassing phone calls in violation of the FDCPA. And, although not present in the complaint, May has never contradicted his statement that Asset once threatened to send a sheriff to his home. This is unlike the plaintiff in <u>Jeffreys</u>, whose "account of the incident at his deposition differed on all points from several accounts that [he] gave shortly after the incident happened." <u>Rivera</u>, 702 F.3d at 695. "As another district court has put it, the plaintiff's story in <u>Jeffreys</u> was 'spectacularly outlandish'" and "[t]he Jeffreys court itself stated that it would require a 'suspension of disbelief' for a jury to credit the plaintiff's allegations." <u>Moore v. Casselberry</u>, 584 F. Supp. 2d 580, 586 (W.D.N.Y. 2008) (quoting <u>Brown v. City of Oakland</u>, No. C03-1141, 2006 WL 1760747, at *8 (N.D. Cal. June 27, 2006); <u>Jeffreys</u>, 426 F.3d at 555). Moreover, the plaintiff in <u>Jeffreys</u> contradicted himself on his principal allegation – that the police threw him out

9

of a third story window (he initially said that he jumped out). <u>Jeffreys</u>, 426 F.3d at 551–52.

Here, there is no question that May's complaint differs from his deposition testimony, but it does not "differ on all points." And May never contradicted himself on the foundational allegations of his claim. Though he retracted his statement regarding voice messages and abandoned his TCPA claim, on the larger issues, including the frequency of the calls and the accusation regarding the sheriff, May has been consistent. Though his testimony is largely self-serving and unsupported by other evidence – such as call logs – it is up to the jury to determine whether to believe him.[3] <u>See, e.g.</u>, <u>Moore</u>, 584 F. Supp. 2d at 587 ("In short, although the credibility of plaintiff's testimony concerning the alleged assault is certainly inconsistent with other evidence and is subject to serious question, it is not so blatantly false that the Court may simply reject it as a matter of law"); <u>Johnson v. Niehus</u>, No. CV 105-125, 2007 WL 1185675, at *9 (S.D. Ga. Apr. 18, 2007) (although "Plaintiff's testimony . . . [wa]s difficult to square with the evidence of record," that testimony was "not so outrageous or implausible that no reasonable juror could believe . . . his testimony").

Although this Court will not weigh the credibility of May's allegation, it still must determine whether, if credited, the allegations would constitute a violation fo the FDCPA. The alleged threat regarding a potential lawsuit and a visit from the sheriff would constitute such a violation. Section 1692e(5) of the FDCPA prohibits a threat of legal action that "is not intended to be taken." Similarly, Section 1692e(4) prohibits "[t]he representation or implication that nonpayment of any debt will result in [] arrest . . . unless such action is

---

[3]Asset notes that May has not presented any evidence – particularly in the form of a call history – from his cellular provider. Even if this documentation exists and even if May has an ongoing duty to provide it (as Asset argues), Asset's recourse is a motion to compel, not a grant of summary judgment. To date, Asset has filed no such motion, and May is entitled to rely on his own testimony.

lawful and the debt collector or creditor intends to take such action." Finally, Section 1692e(7) prohibits "[t]he false representation or implication that the consumer committed any crime . . . ." Asset does not contend that it actually intended to file a lawsuit. To be sure, no lawsuit was commenced and no sheriff appeared. As such, the claims relevant to this accusation are viable.

The same is true regarding the number of calls May received. May contends that Asset violated Sections 1692d and 1692d(5) by calling him numerous times. Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692d(5) further prohibits a debt collector from "causing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass." Although May is unable to identify the number of calls he received, this does not compel a conclusion, as Asset argues, that it did not intend to harass or annoy May. See e.g., Moore v. Firstsource Advantage, LLC, 07-CV-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011) (genuine issue of material fact exists where plaintiff alleges multiple calls despite no clarification about the frequency with or pattern in which the calls were made). In addition to his testimony that Asset continued to call him after he requested that the calls cease, he also alleges that Asset once called him back within "minutes" after hanging up the phone. (May Dep., at 44–45). This is also a viable claim under Section 1692d; indeed "[a] jury must determine the motivation behind this call and whether it violated the FDCPA." Moltz v. Firstsource Advantage, LLC, No. 08-CV-239S, 2011 WL 3360010, at *3 (W.D.N.Y. Aug. 3, 2011) (jury may infer intentional harassment when a collector immediately recalled a debtor); see Conover v. BYL Collection Services, LLC, No. 11-CV-6244P, 2012 WL 4363740, at *6

11

(W.D.N.Y. Sept. 21, 2012) ("[H]arassment may be found where a debt collector immediately phones a debtor after the debtor has hung up or continues to call after the debtor has requested that the debt collector stop calling.").

May's Section 1692f claim, however, must be dismissed. Section 1692f simply "allows the court to sanction improper conduct that the FDCPA fails to address specifically." Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (quoting Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521, 528 (E.D. Pa.1996)). As May's allegations state claims under other sections of the FDCPA, May cannot sustain a claim under Section 1692f.

### 3.      "Exempt" debt

May also alleges that Asset violated the FDCPA by trying to collect a debt despite knowing that May had "exempt income" under New York's Exempt Income Protection Act, N.Y. C.P.L.R. §§ 5205 *et seq*. This law governs the enforcement and collection of money judgments in New York state courts. But Asset is not seeking to execute a court-ordered money judgment, and May's attempt to connect this law to a FDCPA violation is entirely unsupported in his papers.  It is therefore rejected.

### IV. CONCLUSION

Those claims regarding the number of phone calls May received and the lone threatening phone call survive Asset's motion for summary judgment. May can, accordingly, pursue claims under 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(4), 1692e(5), and 1692e(7). On these issues, triable issues of fact exist. But May's other claims are dismissed for the reasons discussed above.

12

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 26) is GRANTED in part and DENIED in part.

SO ORDERED.

Dated: March 28, 2013

Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court

13